IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA,
SAN FRANCISCO DIVISION

| | |
|---|---|
| MARGIE McRAE, | ) |
| Plaintiff, | ) C 06 1999 |
| vs. | ) CIVIL ACTION NO. _____ |
| SOCIAL SECURITY ADMINISTRATION, | ) |
| INTERNAL REVENUE SERVICE, | ) |
| Defendants. | ) |

## COMPLAINT FOR DAMAGES

1.

### JURISDICTION

Defendants are federal government agencies and the amount in controversy exceeds $500,000.00. Defendant Social Security Administration is headquartered in Baltimore, Maryland, while Defendant Internal Revenue Service is headquartered in Washington, D.C. Plaintiff is a resident of Oakland, California.

2.

### VENUE

Actions that form the basis for this complaint occurred at the Social Security Administration facility in Richmond, California. Prior to moving to Richmond, that facility was located in San Francisco. Both defendants conduct business in this District and plaintiff resides in this District.

3.

PARTIES

Plaintiff, Margie McRae, is a physician, board certified in surgery in about 1982, with a lot of experience in Internal/General Medicine, and less in Musculoskeletal conditions and very little in Neurology. She has at all times pertinent to this complaint been a resident of Oakland, California.

Defendant Social Security Administration employed plaintiff from about July 2, 2001 and summarily terminated plaintiff effective September 27, 2004. Work related activity was at defendant's Richmond, California facility, the Frank Hagel Building.

Defendant Internal Revenue Service is joined, by necessity, in order that it should be bound by this Court's determination of plaintiff's work status as an employee rather than an independent contractor. No monetary damages are sought from defendant Internal Revenue Service.

4.

NOTICE OF INTENT TO FILE A LAWSUIT

Plaintiff notified each defendant of intent to file a lawsuit by certified mail with return receipt posted March 16, 2005. Copies are attached to this complaint as Exhibit's A and B. Plaintiff also filed a complaint with EEOC on the same date, but it was ignored. Plaintiff had disclosed that she was labeled an independent contractor, but was in fact treated like an employee.

5.

FACTUAL ALLEGATIONS

Plaintiff, a physician for over 30 years, submitted a proposal for a contract with the Social Security Administration. She received a response dated June 26, 2001 that stated:

> "Your proposal, dated May 16, 2001 ……. has been thoroughly reviewed and found to be acceptable to the government for the specialty of **Internal Medicine**." (emphasis in original).

A copy of this letter is attached to this complaint as Exhibit C, a second letter reiterating the information is enclosed as Exhibit D, and a copy of the fully executed ***unilateral contract*** is attached as Exhibit E. The last page of Exhibit C is an "Equal Opportunity Is THE LAW" statement. Plaintiff did not apply for work in any specialty except Internal Medicine (Exhibit E).

6.

Though a thorough review did not find plaintiff acceptable for the specialty of Musculoskeletal conditions, she was immediately mandated to review Musculoskeletal cases virtually exclusively when she reported to work on or about July 2, 2001. That mandate was verbally communicated on several occasions by Project Coordinator, Phyllis Scaduto, then committed to writing in a memo to plaintiff dated August 14, 2002. Scaduto stated, falsely, that plaintiff had been given an "…all-purpose contract for internal medicine and musculoskeletal specialties, but the latter is really our main focus." A thorough review had, in fact, not shown plaintiff to be acceptable for review of Musculoskeletal cases, plaintiff had not submitted a proposal for the Musculoskeletal specialty, and that was not her expectation under the terms of the ***unilateral contract*** for **Internal Medicine**. Plaintiff was also assigned Neurology cases, a specialty in which she

had very little experience. As a result, those cases required more time for adjudication as plaintiff had to research those clinical conditions prior to analysis.

7.

DUTIES

Plaintiff's job title was Medical Consultant and her work was mostly quality review of the Social Security programs administered by the State of California under the oversight of the Social Security Administration. The Disability Quality Branch (hereafter DQB) was responsible for oversight of plaintiff's work, but was also responsible for the quality and deficiencies of the State employed doctors whose initial review was scrutinized by plaintiff for quality. Doctors who did the initial reviews were State of California civil service employees in the Department of ? Developmental Services (hereafter, DDS), who like plaintiff, were titled Medical Consultants.

Plaintiff and other federal Medical Consultants also did some of the same initial case reviews done by the state employed Medical Consultants. Some Medical Consultants did these cases on a routine basis. These were FDU cases. Special physician expertise was not required, as the work was also done by non-medical lay persons designated Single Decision Makers (hereafter SDMs) and quality review of plaintiff's work was performed by non-medical DQB lay persons.

8.

TRAINING

Medical Consultants spent three (3) months in training and had to pass an examination upon completion of training. Plaintiff was given training materials and the

first item on the Agenda was, "MC Orientation and Employment Information". There was a lot of ongoing training, videos, lectures, computer training with support staff, one on one teaching, etc.

9.

PROCESS, NOT PRODUCT

When Medical Consultants found quality issues, these were documented with a report designated a *416*. DDS doctors, of course, did not like getting these negative reports challenging their decisions, so they responded with a "Protest" if there were any colorable grounds for disagreement. Responding to these "Protests" was a very costly process that required input from several people and several days time. Plaintiff had only two "Protests" in the more than three years she was at Social Security, though she consistently had one of the highest *416* rates in the department, more in line with the rest of the country. The San Francisco region was an outlier in that it generated significantly less *416s* and more allowances of claims than the other Social Security regions.

This objective product result was not used at all for evaluation of performance. Evaluations were performed by non-medical lay persons with some preliminary review of some cases by physician supervisors from an unrelated specialty. Practically all of plaintiff's cases were Musculoskeletal, but none was reviewed by a Musculoskeletal specialist. A Neurology case review demonstrated the inappropriateness of this policy. Plaintiff was accused of ignoring the claimant's pain. Unlike the reviewer, plaintiff had researched the condition and found that the lesion caused anesthesia, not pain. Claimant's pain was in the lower back, while the lesion was in her upper back. Review

samples were very small and there was no evidence that cases were randomly selected rather than specifically selected to achieve a particular result. Deficiencies cited included a typographical error on a date and inadvertent omission of a signature.

10.

DISPARATE TREATMENT

Plaintiff was given productivity standards that did not factor in the fact that she had been mandated to work out of specialty virtually exclusively and had to research Musculoskeletal conditions in order to be accurate in her assessments. Plaintiff was reprimanded for a productivity of one case per hour, while a male trained Musculoskeletal specialist openly discussed the fact that it took him a whole day, or longer, to complete a single case.

Another male Musculoskeletal specialist had considerably more "Protests" than plaintiff, while generating less of the time intensive *416*s. Unlike plaintiff, he was not reprimanded or terminated. Plaintiff also observed that he had difficulty with the use of computers.

At the time productivity was discussed, plaintiff was informed that Medical Consultants had different contracts, not uniform like the state employed Medical Consultants, and that productivity requirements were different for each contractor so contractors could not be compared.

Plaintiff was also accused of not being at the facility enough. She had to be away because of a personal catastrophe that required out of state travel, yet it was acceptable that a male physician was absent more than plaintiff for pleasure travel.

11.

## DISCRIMINATION COMPLAINT

Based on the disparate treatment, plaintiff filed a complaint for discrimination with Human Resources on January 13, 2004 after several complaints of discrimination were ignored by the contract administrators. Human Resources Director, Alice D. Butler, responded on January 24, 2004 advising plaintiff that her office "…is not involved in the issuance or administration of contracts."

12.

## REASONABLE ACCOMMODATIONS REQUEST

Plaintiff had also requested reasonable accommodation under the Americans With Disabilities Act (ADA) after her personal catastrophe. This accommodation would have been easily accomplished by allowing plaintiff to work in the specialty for which she had been hired. No extraordinary accommodation was sought. That request was ignored and not even investigated.

13.

## RETALIATION FOR PROTECTED ACTIVITY

After plaintiff raised concerns about discrimination and made a request for reasonable accommodations, her evaluations focused even more on minor issues and false statements, including matters plaintiff had brought to the attention of one of her physician supervisors in a memo. Instead of addressing the problem for which plaintiff had sought a solution from administration, the matter over which she had no control was turned against her in an evaluation.

Plaintiff's summary termination immediately followed her last meeting with Karen Giles, Contracting Officer, Phyllis Scaduto, Project Coordinator, and Pam Thomas. Termination was effective September 27, 2004, though plaintiff had been given a contract for January 1, 2004 through December 31, 2004 (Exhibit F), with a subsequent modification to increase her hours and compensation (Exhibit G).

Plaintiff had submitted a Freedom of Information Act (FOIA) request for comparative information that would allow her to investigate the disparate treatment administration had refused to investigate. No information was ever produced. Comparative information had been refused under the guise of privacy concerns.

Plaintiff had 30 days to respond to evaluations. She always analyzed the cases and criticisms and responded in writing. There was never any acknowledgement or discussion of her comments and explanations. Plaintiff's termination notice was sent *before* the 30 day response time had elapsed, though the termination was allegedly based on the evaluations. Plaintiff nevertheless responded and also documented several cases with more significant deficiencies than those alleged against her, many in a single day, that she merely corrected and forwarded as a matter of practice, as they were clearly inadvertencies not necessarily indicative of incompetence.

Plaintiff had engaged in protected speech.

14.

EMPLOYEE, NOT INDEPENDENT CONTRACTOR

Despite the language of the *unilateral contract*, the actual situation is what is dispositive. Plaintiff did not do specialized work that only medically trained persons

could perform as discussed in 7 supra. She was trained for the work at the work site for three (3) months and had to pass an examination as discussed in 8 supra. Training manuals were provided. Process was more important than product as discussed in 9 supra. Plaintiff worked exclusively at defendant Social Security's facility. She punched a time clock for the first time in her entire medical career, and was paid by the hour like an hourly wage earner. Work hours were Monday through Friday, 6:00 a.m. to 6:00 p.m. Schedules had to be filed with the clerk before the beginning of each month and Medical Consultants were required to phone if they did not come in on a scheduled workday.

Work was micromanaged to the point where cases were selected for each individual doctor by the Project Coordinator or her designee. There were two (2) physician supervisors. The work process was the same as for the state employed DDS Medical Consultants and the non-medical SDMs discussed in 7 supra. When plaintiff did initial case reviews, she was doing exactly the same work done by the state employed doctors and SDMs.

Non-medical DQB workers evaluated plaintiff's work performance. Medical Consultants were required to come into the office to work and to be available for DQB consultation. Those who did take "home" cases had to work at the facility in order to be eligible to take cases home after work. Take home cases had to be input in the computer at the work site only, as Social Security computers had to be used exclusively. All tools were supplied by Social Security Administration, even pens and pencils. Plaintiff was unilaterally, involuntarily reassigned, like an employee, to a specialty for which she had not been found to be acceptable, in violation of her contract, despite protest.

Employees have a privacy interest in work performance evaluations, but publicly awarded contracts are a matter of public interest and the public, including plaintiff, have a right to know about the performance of contractors receiving public funds and disparity in the awarding or terms of public contracts. The privacy excuse in 14 supra would apply to an employee, not an independent contractor.

15.

PETITION FOR DECLARATORY RELIEF

Plaintiff hereby incorporates by reference paragraphs 1 - 9, and 14. This cause of action is against the Internal Revenue Service and Social Security Administration for a decision that plaintiff was an employee, not an independent contractor.

16.

SLANDER PER SE

Plaintiff hereby incorporates by reference paragraphs 1-14. This cause of action is against defendant Social Security Administration. Plaintiff was summarily terminated based on allegations of performance deficiencies. As a highly trained physician, board certified in general surgery in 1982 when less than 1% of all general surgeons were women, this denigration and disparagement of plaintiff professionally is slanderous per se and will follow plaintiff in the future as she is subject to compulsory disclosure of the stated reason for her summary termination.

17.

GENDER DISCRIMINATION

Plaintiff hereby incorporates by reference paragraphs 1-14. This cause of action is

against defendant Social Security Administration. Plaintiff was treated less favorably than males who did not perform as competently as plaintiff. Despite a legal obligation to investigate, and respond to, plaintiff's discrimination complaints, all were ignored. This occurred despite the Equal Employment Opportunity notice sent to plaintiff by defendant Social Security Administration that indicated defendant's awareness of anti discrimination obligations.

18.

### VIOLATION OF AMERICANS WITH DISABILITIES ACT

Plaintiff hereby incorporates by reference paragraphs 1-14. This cause of action is against defendant Social Security Administration. Reasonable accommodation for plaintiff's difficulty related to a personal catastrophe would have been easily accomplished by allowing plaintiff to work within the specialty for which she had been found to be acceptable rather than compete in an area for which she had not even been found to be acceptable. The failed obligation to investigate and implement such an obvious, easy and just accommodation is actionable.

19.

### RETALIALTION FOR PROTECTED SPEECH

Plaintiff hereby incorporates by reference paragraphs 1-14. This cause of action is against defendant Social Security Administration. Plaintiff's summary termination followed yet another request for attention to her concern about her employment status and being forced to work in a specialty for which she had not been found to be acceptable with evaluations based on subjectively selected small samples and refusal to address her

analysis, comments, and concerns about disparate treatment.

20.

RETALIATION FOR DISCRIMINATION COMPLAINT

Plaintiff hereby incorporates by reference paragraphs 1-14. This cause of action is against defendant Social Security Administration. Summary termination followed right on the heels of plaintiff's latest discrimination complaint and request for investigation after no action was ever taken.

21.

RETALIATION FOR COMPLAINT FOR DISCRIMINATION UNDER THE

AMERICAN WITH DISABILITIES ACT (ADA)

Plaintiff hereby incorporates by reference paragraphs 1-14. This cause of action is against defendant Social Security Administration. Summary termination followed plaintiff's latest request for reasonable accommodation by allowing her to work within the specialty for which she had been found to be acceptable after thorough review.

22.

VIOLATION OF WAGE AND HOUR LAWS

Plaintiff hereby incorporates by reference paragraphs 1-14. This cause of action is against defendant Social Security Administration. Plaintiff, an employee not an independent contractor, was not paid immediately after termination.

23.

BAD FAITH BREACH OF CONTRACT

Plaintiff hereby incorporates by reference 1-14. This cause of action is against

defendant Social Security Administration. Plaintiff had a contract from January 1, 2004 through December 31, 2004. The summary termination was in violation of that contract. Summary termination immediately followed plaintiff's protected activity in trying to protect herself from discrimination, as promised by defendant Social Security in Exhibit C. Bad faith is apparent in defendant Social Security Administration's refusal to address plaintiff's comments about her evaluations, and refusal to even investigate any of plaintiff's complaints about disparity, though aware of its legal obligation to do so based on the Equal Employment Opportunity notice incorporated in plaintiff's contract.

Unilateral mandatory assignment of plaintiff to a specialty for which plaintiff had neither applied, nor been found to be acceptable after a thorough review, is prima facie evidence of bad faith and breach of contract.

24.

PUNITIVE DAMAGES

Plaintiff hereby incorporates by reference paragraphs 1-14. This cause of action is against defendant Social Security Administration. Defendant Social Security's behavior in flagrant violation of the laws designed to protect persons in plaintiff's protected class, even in refusing to investigate or respond in any way, shows a wanton, reckless, odious indifference to, and disregard for the law and legal obligations. The blatant summary termination after plaintiff's reiteration of her concerns, and the resultant financial punishment of plaintiff support punitive damages against defendant Social Security Administration. The unconscionable mandatory assignment of plaintiff to a specialty for which she had neither applied, nor been found to be acceptable, while evaluating her

more harshly than trained male physicians practicing within their specialties, is a set up for failure and that behavior warrants punitive damages.

25.

PRAYER FOR RELIEF

WHEREFORE, plaintiff requests this Court to award the following relief:

    A. A determination that plaintiff was an employee, not an independent contractor.

    B. Damages in the nature of special, general and punitive damages from defendant Social Security Administration in an amount to compensate plaintiff and to deter similar conduct by defendant. Plaintiff requests no monetary damages from the Internal Revenue Service.

    C. Attorneys' fees and costs of litigation pursuant to applicable federal and state law.

    D. Expenses of litigation pursuant to applicable federal and state law.

    E. Such other and further relief as this Court deems just and appropriate.

    F. Plaintiff demands a trial by jury.

BY: _____   Dated: March 15, 2006
MARGIE McRAE, Plaintiffs